UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

DAVID H. BULL
and MARY A. BULL,                          Bankruptcy Case No. 3:12-bk-01522-3GI

      Debtors

_____

PAETEC COMMUNICATIONS, INC.,

      Appellant,

vs.                                        Case No. 3:14-cv-815-J-39

DAVID H. BULL and MARY A. BULL,

      Appellees.

_____

## ORDER

**THIS CAUSE** is before the Court on appeal from the United States Bankruptcy
Court for the Middle District of Florida.  Appellant, Paetec Communications, Inc.
("Paetec"), seeks review of the Bankruptcy Court's Order (1) sustaining the
Appellee/Debtors' Objection to Claim 19 of Paetec Communications, Inc., and disallowing
Claim No. 19, and (2) denying Paetec's Motion to Substantively Consolidate Debtor David
Bull's Wholly Owned Company Into This Estate (Doc. 1-3; Bankruptcy Court Order),[1]
entered on May 6, 2014.  (See Doc. 1-1; Notice of Appeal).  On September 1, 2014,
Paetec filed its initial brief, (Doc. 9; Paetec Initial Brief).  Appellees/Debtors David H. Bull

_____

[1]  All citations will be made to the Bankruptcy Record on Appeal before this Court.  (See Doc.
1).

and Mary A. Bull (collectively "Appellees/Debtors" or "the Bulls") filed an answer brief on

December 15, 2014 (Doc. 17; Answer Brief), and Paetec filed a reply brief on January 16,

2015. (Doc. 18; Paetec Reply Brief). The appeal is ripe for review.[2]

## I.    Background

On March 8, 2012, Debtors/Appellees David Bull and Mary Bull filed a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code. (Doc. 1-3; Bankruptcy Court

Order at 3); (Docs. 1-6 and 1-7). Among the assets that belong to the Bulls' bankruptcy

estate is David Bull's 100% ownership interest in Bull Communications, Inc., ("BCI"), a

closely held corporation. (Doc. 1-3; Bankruptcy Court Order at 2); (Doc. 1-10 at 6;

Summary of Schedules). David Bull is also president of BCI, and Mary Bull, David Bull's

wife, is an officer of BCI, but not an owner. Bankruptcy Court Order at 2; (Doc. 1-72 at 4;

Amended Disclosure Statement). Though the Bulls listed shares of BCI as an asset on

their statement of personal property, they listed the value of the asset is "unknown."

Bankruptcy Court Order at 3 (citing Doc. 1-10; Summary of Schedules).

BCI and Paetec have a business relationship.

> On October 26, 1998, BCI and PaeTec entered into a Sales
> Agent Agreement. (Attachment to Claim No. 19-1). Pursuant

---

[2]  Also pending is Appellees' Motion to Dismiss, filed on October 31, 2014, (Doc. 15; Motion), to which Paetec filed a response in opposition on November 3, 2014. (Doc. 16; Response). In the Motion, the Bulls argue that Paetec's appeal should be dismissed because Paetec did not include certain items in its initial brief that are required by governing rules of procedure, namely, a corporate disclosure statement, "'filing dates establishing the timeliness of the appeal or petition for review,'" and "'an assertion that the appeal is from a final order or judgment . . . .'" Motion at 2-3 (quoting Rules 26.1, and 28, Federal Rules of Appellate Procedure). In response to the Court's Order, (Doc. 19), Paetec filed a Corporate Disclosure Statement on February 27, 2015. (Doc. 20). Appellees'/Debtors' Motion is limited to procedural concerns. Upon review, the procedural propriety and timeliness of this appeal are apparent from the face of Paetec's Initial Brief, and the Record. (Doc. 1); see also Fed. R. Bankr. P. 8002, 8003, 8014. The Court determines that the slight procedural shortcomings in Paetec's Initial Brief are not sufficient to constitute a bar to the Court's considering this appeal on its merits. As such, Appellees' Motion to Dismiss is due to be denied.

to the Agreement, PaeTec authorized BCI "to serve as a non-exclusive independent contractor to procure customers for PaeTec's various telecommunications products and services," and agreed to pay BCI certain commissions on the products and services provided by PaeTec to the customers procured by BCI.

Bankruptcy Court Order at 2.  "Paetec terminated the Agreement with BCI in November of 2008."  Bankruptcy Court Order at 2 (citing Doc. 1-117; Evidentiary Hearing Transcript Volume I at 71 ("Transcript, Vol. I")).

In 2010, BCI filed a state-court action against Paetec in New York, styled Bull Communications, Inc. v. Paetec Communications, Inc., which is currently pending in the state court in Monroe County, New York ("the New York Litigation").  Bankruptcy Court Order at 2; (Doc. 1-72 at 4; Amended Disclosure Statement).  In the New York Litigation, BCI alleges that PaeTec "improperly reduced the commissions that were payable to BCI under the Agreement."  Bankruptcy Court Order at 2 (citing Doc. 1-44; Disclosure Statement at 4) and (Doc. 1-61; Case Management Order at 2).  Paetec has filed a counterclaim against BCI in the New York Litigation, alleging that BCI had been unjustly enriched by $1 million.  Bankruptcy Court Order at 1, 3; (See Doc. 1-23 at 11; Paetec Counterclaim).  The Bulls are not parties to the New York Litigation, and have not identified that lawsuit as an asset of the bankruptcy estate.  (See Doc. 1-10 at 4-7; Summary of Schedules).  Nor did Bulls list Paetec as a creditor holding an unsecured claim.  Id. at 12-16.[3]

---

[3]  According to Debtors/Appellees, pursuant to the contract between Paetec and BCI, Paetec was obligated to pay BCI a monthly commission on products and services provided by Paetec to customers procured by BCI for as long as such customers remain customers of Paetec.  (Doc. 1-72 at 4; Amended Disclosure Statement); (see also Doc. 1-23 at 16; Sales Agent Agreement).  Though the contract was terminated in 2008, Appellees/Debtors contend that Paetec remains obligated under the

(continued...)

Following briefing and two evidentiary hearings, conducted on August 26, 2013, and continued on January 10, 2014, the Bankruptcy Court sustained Appellees'/Debtors' Objection to Paetec's Claim No. 19 and disallowed the claim in this Chapter 11 case, and denied Paetec's Motion to Substantively Consolidate Debtor David Bull's Wholly Owned Company Bull Communications, Inc. into this Estate. (Doc. 1-3; Bankruptcy Court Order at 12). Paetec appeals the Bankruptcy Court's Order.

I.    **Jurisdiction**

This Court has jurisdiction to hear an appeal from a final judgment, order, or decree entered by the United States Bankruptcy Court. 28 U.S.C. § 158(a).

   A.    **Standing**

While conceding that the Court has jurisdiction to consider Paetec's appeal from the Bankruptcy Court's Order sustaining the Appellees'/Debtors' Objection to Claim No. 19 of Paetec, and disallowing the claim, Appellees/Debtors contend that the Court lacks jurisdiction to consider that portion of the Bankruptcy Court's Order denying Paetec's Motion for Substantive Consolidation. (Doc. 17; Answer Brief at 7-8). Appellees/Debtors argue that Paetec has not established its standing to pursue the appeal because it is not a creditor of the Bulls' estate. They argue that substantive consolidation can only be

_____

[3](...continued)
Agreement to continue to pay commissions to BCI for customers that were obtained by BCI. The Appellees/Debtors state that Paetec "unilaterally decided to reduce the commission payments to BCI by approximately 40%," and the New York Litigation followed. (Doc. 1-72 at 4; Amended Disclosure Statement). In its counterclaim, Paetec alleges that BCI has been unjustly enriched by $1 million. (Doc. 1-23 at 11; Paetec Counterclaim). The Bulls disclosed that during the pendency of the bankruptcy litigation they continue to receive, and were projected to receive, commission payments from Paetec in the amount of approximately $19,000 per month. (Doc. 1-72 at 4; Amended Disclosure Statement); (Doc. 1-10 at 19; Summary of Schedules); (see also Transcript, Vol. I at 111 (Paetec is currently paying BCI $20,000-$22,000 a month); Transcript, Vol. I at 44 (BCI receives ongoing compensation from Paetec in the amount of $250,000 per year in return for its promise not to sell to certain current and former Paetec customers).

pursued by a trustee or creditor. Id. at 8-10. Paetec responds that it has standing to

pursue the appeal because "'creditors have standing to pursue substantive

consolidation.'" (Doc. 18; Paetec Reply Brief at 1 (quoting First Owners Ass'n of Forty Six

Hundred Condo. Inc. v. Gordon Prop., LLC (In re Gordon Prop., LLC), 478 B.R. 750, 756

(E.D. Va. 2012)).

Federal courts are courts of limited jurisdiction and therefore have an obligation to

inquire into their subject matter jurisdiction. See Kirkland v. Midland Mortg. Co., 243 F.3d

1277, 1279-1280 (11th Cir. 2001); see also Burns v. Windsor Ins. Co., 31 F.3d 1092,

1095 (11th Cir. 1994). Standing is a "'threshold jurisdictional question'" that must be

addressed and satisfied at each stage of the litigation. See Florida Family Policy Council

v. Freeman, 561 F.3d 1246, 1253 (11th Cir. 2009) (quoting Elend v. Basham, 471 F.3d

1199, 1204 (11th Cir. 2006)).[4]

Both parties agree that creditors have standing to pursue substantive consolidation

of a bankruptcy estate. At this juncture of the appeal, Paetec arguendo is a creditor of

the Bulls' bankruptcy estate by virtue of its pending counterclaim brought against BCI,

and its position in this bankruptcy case that it can assert that claim on the Bulls' estate by

piercing BCI's corporate veil. See generally Smith v. Atl. S. Bank (In re Smith), 522 F.

---

[4]     Article III of the United States Constitution permits the court to hear only "Cases" and
"Controversies." U.S. Const. art. III, § 2; see Warth v. Seldin, 422 U.S. 490, 498 (1975). The doctrine
of standing implicates whether a dispute is a case or controversy that can be "appropriately resolved
through the judicial process." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal marks
and citation omitted). Article III standing has three elements: (1) injury in fact to "a legally protected
interest" that is "'(a) concrete and particularized and (b) actual or imminent, not conjectural or
hypothetical;'" (2) "'a causal connection between the injury and the conduct complained of'" that is fairly
traceable to the defendant's action; and (3) a likelihood that the injury will be redressed by a favorable
decision. Fla. Family Policy Council, 561 F.3d at 1253 (quoting Lujan, 504 U.S. at 560-61); see e.g.
Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc., 528 U.S. 167, 180-81 (2000); CAMP Legal
Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006).

App'x 760, 765 (11th Cir. 2013)[5] (creditor had standing at the time it filed its motion for stay relief, based upon the allegations in its motion that it was a secured creditor).[6]  In this posture, Paetec as a "creditor," meets the Eleventh Circuit's standard for standing to appeal an order of the Bankruptcy Court as a "person aggrieved" by the Bankruptcy Court's Order.  See Atkinson v. Ernie Haire Ford, Inc. (In re Ernie Haire Ford, Inc.), 764 F.3d 1321, 1325-26  (11th Cir. 2014).  "The person aggrieved doctrine limits the right to appeal a bankruptcy court order to 'those parties having a direct and substantial interest in the question being appealed.'"  Id. at 1325.  "Aggrieved persons" are those who are "'directly, adversely, and pecuniarily affect[ed]' by a bankruptcy court's order," which occurs "if that order diminishes their property, increases their burdens, or impairs their rights.'"  Id. (quoting Westwood Cmty. Two Ass'n, Inc. v. Barbee (In re Westwood Cmty. Two Ass'n, Inc.), 293 F.3d 1332, 1337-38 (11th Cir. 2002)); see also Little Rest Twelve, Inc. v. Solby+Westbrae Partners (In re Fisher Island Inv., Inc.), No. 14-11771, __F.3d __, 2015 WL 729689, at *19 (11th Cir. Feb. 20, 2015).

## B.    **Final Order**

Appellees/Debtors also question whether the portion of the Bankruptcy Court's Order denying Paetec's Motion for Substantive Consolidation is a final appealable order under 28 U.S.C. § 158(a)(1), properly before this Court on appeal.  (Doc.17; Answer Brief

---

[5]  "Although an unpublished opinion is not binding . . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam).  See generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[6]  Indeed, Paetec entitles its substantive consolidation motion as "Creditor Paetec Communications, Inc.'s Motion to Substantively Consolidate Debtor David Bull's Wholly Owned Company Bull Communications, Inc. Into This Estate."  (Doc. 1-36).

at 10).  They argue that finality only attaches to orders <u>granting</u> substantive consolidation.

<u>Id.</u> (citing <u>Huntington Nat'l Bank v. Richardson (In re Cyberco Holdings, Inc.)</u>. 734 F.3d

432, 440 (6th Cir. 2013)).  Paetec responds that there is a split of authority on the

question of finality, and that courts in other circuits have determined that substantive

consolidation orders both granting and denying relief are final and appealable under §

158(a). (Doc. 18; Paetec Reply Brief at 2-3) (citing <u>Alexander v. Compton (In re Bonham)</u>,

229 F.3d 750, 762 (9th Cir. 2000) (finding a substantive consolidation order appealable

because it "seriously affects the substantive rights of the involved parties"); <u>In re Owens</u>

<u>Corning</u>, 419 F.3d 195, 203-05 (3d Cir. 2005); <u>In re 599 Consumer Elec., Inc.</u>, 195 B.R.

244, 247 (S.D.N.Y. 1996) (district court had 28 U.S.C. § 158(a) jurisdiction to review

bankruptcy court's denial of a motion for substantive consolidation)).  Paetec argues that

though the Eleventh Circuit Court of Appeals has not decided the question, this case is

one in which the Bankruptcy Court's denial of Paetec's Motion for Substantive

Consolidation represents a final order because "[t]here is nothing left to adjudicate with

respect to Paetec."  Paetec Reply Brief at 3.

    In <u>In re Cyberco Holdings</u>, cited by Appellees/Debtors, the Sixth Circuit Court of

Appeals held that the bankruptcy court's orders denying motions to substantively

consolidate bankruptcy estates were not final appealable orders within the meaning of 28

U.S.C. § 158(a)(1).  734 F.3d at 440.  The court differentiated between orders granting

the relief and denying the relief, and reasoned that an order denying the relief was not an

appealable final order because the impact of the ruling "is relatively minor," in that "the

parties will proceed to the administration of the separate bankruptcy estates according to

traditional rules."  <u>Id.</u>  On the other hand, the Third Circuit Court of Appeals in <u>In re</u>

Owens Corning, applied a "broader concept of finality" when considering a bankruptcy appeal and concluded that relevant factors counseled the exercise of jurisdiction over an appeal of an order granting substantive consolidation. 419 F.3d at 203-04.

"Finality is given a more flexible interpretation in the bankruptcy context . . . because bankruptcy is an aggregation of controversies and suits," involving multiple parties, and is protracted in nature. Barben v. Donovan (In re Donovan), 532 F.3d 1134, 1136-37 (11th Cir. 2008); see also Martin Bros. Toolmakers, Inc. v. Indus. Dev. Bd. of Huntsville (In re Martin Bros. Toolmakers, Inc.), 796 F.2d 1435, 1437 (11th Cir. 1986) (stating that "finality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole," and recognizing an "accommodative approach"); In re Sanders, No. 13-11065-JKO, 2015 WL 877499, at *3 (Bankr. S.D. Fla. Feb. 26, 2015) ("[T]he 'unique nature of bankruptcy procedure dictates that [appellate courts] take a pragmatic approach to finality.'" (quoting Bonner Mall P'ship v. U.S. Bancorp Mortg. Co. (In re Bonner Mall P'ship), 2 F.3d 899, 903 (9th Cir. 1993))). However, "to be final, a bankruptcy court order must 'completely resolve all of the issues pertaining to a discrete claim, including all issues as to the proper relief.'" In re Donovan, 532 F.3d at 1136-37 (citation omitted); see also Commodore Holdings, Inc. v. Exxon Mobil Corp., 331 F.3d 1257, 1259 (11th Cir. 2003) ("'In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally resolved rather than the entire bankruptcy litigation.'" (quoting The Charter Co. v. Prudential Ins. Co. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985)). "'[T]he same concepts of finality apply in bankruptcy as in any other case, but they are applied to the discrete controversies within the administration of the estate.'" Steffen v. Menchise (In re Steffen), 500 F. App'x

877, 879 (11th Cir. 2012) (quoting In re Donovan, 532 F.3d at 1137).  The concept of

finality excludes decisions that are subject to revision.  Id.  The Eleventh Circuit has

considered appeals from Bankruptcy Court orders granting substantive consolidation,

which were first appealed to the district court, and affirmed.  See Reider v. Fed. Deposit

Ins. Corp. (In re Reider), 31 F.3d 1102, 1104 (11th Cir. 1994); Eastgroup Props. v. S.

Motel Ass'n, Ltd., 935 F.2d 245, 248 (11th Cir. 1991).  It has not addressed whether a

bankruptcy court's denial of a motion for substantive consolidation is a final appealable

order, pursuant to 28 U.S.C. § 158(a).  Other district courts have recognized their

jurisdiction to hear an appeal from a bankruptcy court's denial of substantive

consolidation, declining to differentiate between orders granting and denying substantive

consolidation.  See In re Gordon Prop., LLC, 478 B.R. at 755-56 (reversing denial of

substantive consolidation and remanding to bankruptcy court);  In re 599 Consumer

Elec., 195 B.R. at 247 (vacating denial of substantive consolidation and remanding to the

bankruptcy court to make specific findings of fact).

 The rationale of the Ninth Circuit in In re Cyberco Holdings, Inc., that a denial of a

motion for substantive consolidation is a "relatively minor" blip in the progression of a

bankruptcy case because the parties can "proceed to the administration of the separate

bankruptcy estates according to traditional rules," 734 F.3d at 440, does not apply neatly

to this case.  This is because Paetec seeks to substantively consolidate the estate of the

Appellees/Debtors with the assets of a non-debtor third-party entity, in order to benefit

creditors of the Appellees'/Debtors' estate, including, it asserts, Paetec.  A denial of

Paetec's motion, then, closes the door with finality to any creditor reaching assets of BCI

through the Bulls' bankruptcy proceeding, inasmuch as there is no BCI bankruptcy estate

9

to pursue.

The Court applies the Eleventh Circuit's "flexible interpretation" of finality in the bankruptcy context.  E.g. In re Donovan, 532 F.3d at 1136-37.  Here, the Bankruptcy Court Order disallowed Paetec's claim to proceeds of the Bulls' bankruptcy estate and declined to substantively consolidate the assets of BCI with those of the estate in the same Order, considering the same body of evidence.  Both holdings were based essentially upon the determination that Paetec's claim against BCI cannot be visited upon the Bulls, and that the BCI corporate form would be honored.  It makes pragmatic sense that both holdings would be considered in this appeal.  Moreover, disallowing Paetec's claim and denying substantive consolidation together effectively ends Paetec's interest in the Bulls' estate, concluding the discrete controversy between the Bulls and Paetec, without the possibility of revision.  See In re Steffen, 500 F. App'x at 879.  In these circumstances, the Bankruptcy Court's Order denying Paetec's motion for substantive consolidation is a final appealable order.  28 U.S.C. § 158(a).

## II.    Standard of Review

In this appellate capacity, the Court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions de novo.  Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza), 719 F.3d 1253, 1260 (11th Cir. 2013); Rush v. JLJ Inc. (In re JLJ Inc.), 988 F.2d 1112, 1116 (11th Cir. 1993).  "A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); see also Piazza, 719 F.3d at 1273.  However, "'[w]here there are two permissible views of the evidence, the

10

factfinder's choice between them cannot be clearly erroneous.'" Chira v. Salkin (In re Chira), 378 B.R. 698, 708 (S.D. Fla. 2007) (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985)).  A district court, in its appellate capacity, is not authorized to make independent factual findings.  Equitable Life Assurance Soc'y v. Sublett (In re Sublett), 895 F.2d 1381, 1384 (11th Cir. 1990).  "'If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case to the bankruptcy court for the necessary factual determination.'"  Id. (citation omitted).

A bankruptcy court's decision to allow or disallow a claim is reviewed under the abuse of discretion standard.  Nat'l Capital Mgmt., LLC v. Herman, No. 6:11-cv-9-Orl-28, 2011 WL 4531736, at * 1 (M.D. Fla. Sept. 2, 2011) (quoting (In re Chira), 378 B.R. at 708. Additionally, a bankruptcy court's equitable decision regarding substantive consolidation is reviewed for an abuse of discretion.  In re Reider, 31 F.3d at 1104-05.  "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous."  Hatcher v. Miller (In re Red Carpet Corp. of Panama City Beach), 902 F.2d 883, 890 (11th Cir. 1990).

## III.    Discussion

### A.    Waiver

In its Designation of Record, Statement of Issues, and Statement Regarding Transcripts, Paetec listed the following two issues for consideration in this appeal:

> Whether the Court erred in denying Paetec's Motion for Substantive Consolidation.

11

> Whether the Court erred in sustaining the Debtors' Objection
> to Claim No. 19, as amended.

(Doc. 1-4 at 3).  In its Initial Brief filed in this appeal, Paetec listed the issues for appeal

as being:

> 1.     Whether the Bankruptcy Court made sufficient findings
> of fact and sufficiently explained its ruling with respect to the
> second and third prongs of the alter ego test to pierce the
> corporate veil under Florida law so as to permit meaningful
> appellate review of its Order.  The Bankruptcy Court noted
> that "no" evidence supported these prongs, while not
> mentioning the substantial - and undisputed - evidence
> adduced during the two evidentiary hearings reflecting the
> presence of both prongs.
>
> 2.     Whether the Bankruptcy Court made sufficient findings
> of fact and sufficiently explained its ruling that substantive
> consolidation was not proven when much of the same
> evidence supporting such relief was never mentioned, at least
> two findings of fact of the Bankruptcy Court were clearly
> erroneous, and various pertinent factors in the analysis which
> the evidence supported were not mentioned, or apparently
> even considered.

(Doc. 9; Paetec Initial Brief at 1-2).  Appellees/Debtors contend that Paetec's initial

statement of issues was directed to the "substance" of the Bankruptcy Court's Order as

being erroneous on both issues, while Paetec's brief "attacks the form of the Bankruptcy

Court's Order as lacking sufficient detail."  (Doc. 17; Answer Brief at 18).

Appellees/Debtors note that in its Initial Brief, Paetec requests that this case be

remanded to the Bankruptcy Court "'with instructions for more detailed findings on both

the alter ego findings, and the substantive consolidation findings.'" Answer Brief at 19

(quoting Paetec Initial Brief at 29).  Appellees/Debtors contend that "Paetec's designation

of one set of issues, followed by its briefing of an entirely different set of issues, operate

as reciprocal waivers of both sets of issues, rendering this entire appeal dead on arrival."

Id. at 18. Paetec responds that its initial Statement of Issues represents a broader

pronouncement of the issues briefed, and that the issues briefed are "clearly inferable"

from the initial Statement of Issues. (Doc. 18; Paetec Reply Brief at 6-10). Paetec also

argues that the issues presented in this appeal were argued before the Bankruptcy Court,

and do not constitute a surprise to Appellees/Debtors. Id. at 10-13.

Former Rule 8006, Federal Rules of Bankruptcy Procedure (Bankruptcy Rule(s)),

provided, in pertinent part, that

> Within 14 days after filing the notice of appeal as provided by
> Rule 8001(a) . . . the appellant shall file with the clerk and
> serve on the appellee a designation of the items to be
> included in the record on appeal and a statement of the issues
> to be presented.

Fed. R. Bankr. P. 8006 (2014).[7]  In construing Rule 8006, the Eleventh Circuit Court of

Appeals stated that "[a]n issue that is not listed pursuant to this rule and is not inferable

from the issues that are listed is deemed waived and will not be considered on appeal."

Snap-On Tools, Inc. v. Freeman (In re Freeman), 956 F.2d 252, 255 (11th Cir. 1992).

"'[T]o infer means to derive by reasoning or implication, to conclude from facts or from

factual reasoning, or to reason from one thing to another.'" State of Fla. Dep't of Revenue

v. Davis (In re Davis), No. 8:08-cv-2216-T-33, 2011 WL 997270, at *2 (M.D. Fla. March

18, 2011) (quoting Hydratech Util., Inc. v. Keathley (In re Hydratech Util., Inc.). No. 2:08-

cv-331-FtM-UA, 2009 WL 482275, at *2 (M.D. Fla. Feb. 25, 2009)).  "[A]s long as an

issue is inferable, then Rule 8006 'is not intended to bind either party to the appeal as to

---

[7]  The Federal Rules of Bankruptcy Procedure were substantially changed in form effective
December 1, 2014.  Bankruptcy Rule 8009 now addresses the statement of issues that Rule 8006
previously addressed, but the statement of issues requirement remains the same. See Fed. R. Bankr.
P. 8009 (a)(1)(A) (2015).  Because Paetec's Designation and Statement of Issues was served on June
2, 2014, and filed with this Court on July 15, 2014, (Doc. 1-4), the Court cites to former Rule 8006.

the issues that are to be presented.'"  Bracewell v. Kelley (In re Bracewell), 322 B.R. 698,

701-702 (M.D. Ga. 2005) (quoting In re Cohoes Indus. Terminal, Inc., 90 B.R. 67, 70

(S.D.N.Y. 1988)).

While there are facial differences between the two statements of the issues on

appeal, the Court determines that the two issues set forth in Paetec's Initial Brief

attacking the Bankruptcy Court's factual findings, are reasonably inferable from Paetec's

Rule 8006 Statement that the Bankruptcy Court "erred" in denying Paetec's Motion for

Substantive Consolidation and in sustaining the Debtors' Objection to Paetec's Claim No.

19.  The fact that the briefed issues are more detailed, pinpointing the specific aspects of

the Bankruptcy Court's Order which Paetec contends were erroneous as to the two

issues decided, does not mean that the issues cannot be "inferred" from the initial

Statement of the Issues.  See In re Davis, 2011 WL 997270, at * 2 ("Appellant has

appropriately narrowed and refined its contentions, which [were] initially raised in its Rule

8006 Statement, albeit by logical inference."); In re Hydratech Util., Inc., 2009 WL

482275, at *2 (striking briefed arguments that "do[ ] not follow a chain of reasoning to get

from the one Rule 8006 Statement issue to the other two Initial Brief issues").  This is not

a matter that requires the Court or Appellees/Debtors to infer from a narrow issue two

completely "distinct and separate" issues.  In re Hydratech Util., Inc., 2009 WL 482275, at

*2.  Moreover, the issues listed and briefed in Paetec's Initial Brief were presented to the

Bankruptcy Court, (see Doc. 1-127 at 8, 11-14, 17-21 and Doc. 1-129 at 4-6 (Paetec

briefs submitted to the Bankruptcy Court arguing why the record supports a finding of

"improper purpose" and resultant damage to Paetec of the corporate veil analysis, and

14

substantive consolidation))[8]; do not require the Court to make independent factual findings; and, in light of the arguments below, do not present a surprise issue to Appellees/Debtors. See In re Bracewell, 322 B.R. at 702; see also Iberiabank v. Geisen (In re FFS Data, Inc.), 776 F.3d 1299, 1306 n.7 (11th Cir. 2015) ("While Iberiabank uses the term res judicata for the first time in its briefing in this Court, the substance of the issues is clearly inferable from Iberiabank's arguments below, which rely on the same cases." (construing Bankruptcy Rule 8006)). The issues on appeal are inferable from the filings.

### B.    Disallowance of Paetec's Claim

#### 1.    Bankruptcy Court Order

On July 23, 2012, Paetec filed a general unsecured claim in the Debtors/Appellees Chapter 11 bankruptcy proceeding, which was assigned Claim No. 19. (Doc. 1-3; Bankruptcy Court Order at 3); (Doc. 1-23; Paetec Claim). In Claim No. 19, Paetec seeks an amount "Unliquidated, in excess of $1,000,000.00," for "Breach of Contract . . . and related torts," based upon its counterclaim in the New York Litigation. (Doc. 1-23; Paetec Claim at 1); see also Bankruptcy Court Order at 1, 3. On September 13, 2012, Debtors/Appellees filed an Amended Objection to Claim No. 19 Filed by Paetec Communications, seeking to have Claim No. 19 disallowed, contending that Paetec's counterclaim is against BCI, and not against the individual Debtors/Appellees. Bankruptcy Court Order at 3; (Doc. 1-22; Objection to Claim). On October 12, 2012, Paetec filed a

---

[8]    The Court does not find that Paetec was required to present the Bankruptcy Court with a motion for reconsideration of its Order prior to bringing this appeal, as suggested by Appellees/Debtors. See Answer Brief at 20. Such a motion for reconsideration would do nothing more than re-assert the evidence and argument that had already been presented to and considered by the Bankruptcy Court.

response in opposition to the Debtors/Appellees' Objection. (See Doc. 17; Answer Brief

at 12). As framed by the Bankruptcy Court, the issue is as follows:

> The Debtors objected to PaeTec's Claim. . . .
> Generally, the Debtors contend that PaeTec has asserted a
> claim only against BCI, not the Debtors individually, and that
> the individual Debtors owe no debt to PaeTec.
>
> PaeTec acknowledges that it holds no direct claim
> against the individual Debtors . . . PaeTec contends, however,
> that the Debtors are personally liable for BCI's debt to PaeTec
> because BCI is the Debtors' alter ego. . . Essentially, PaeTec
> asserts that the corporate veil should be pierced based on the
> Debtors' domination and control of BCI.

Bankruptcy Court Order at 3.  The Bankruptcy Court analyzed Paetec's Claim and

Appellees'/Debtors' Objection under both New York and Florida law, and concluded that

"[t]he evidence does not establish that BCI's corporate form should be disregarded. Id.

   To pierce the corporate veil under either New York or Florida law, the evidence

must show that the individuals used the corporation improperly to commit a wrong that

injured the moving party.[9]  A showing that a shareholder controlled the corporation,

without more, is insufficient to justify relief.

> Under New York law, "a court may pierce the corporate veil
> and find an individual liable for the debts of the corporation
> 'where 1) the owner exercised complete domination over the
> corporation with respect to the transaction at issue, and 2)
> such domination was used to commit a fraud or wrong that
> injured the party seeking to pierce the veil.'" (Citation omitted).
> The N.Y. Court of Appeals has explained the rule as follows:
>
> > While complete domination of the corporation is the key
> > to piercing the corporate veil, especially when the

---

[9]  Paetec does not take issue with the legal standards for piercing the corporate veil applied by
Bankruptcy Court. (See Doc. 9; Paetec Initial Brief at 1, 4).  The Court has reviewed the law relied upon
by the Bankruptcy Court de novo, and has found no error.  Accordingly, the Court will set forth the legal
standards considered by the Bankruptcy Court. See Bankruptcy Order at 3-4.

> owners use the corporation as a mere device to further
> their personal rather than the corporate business, such
> domination, standing alone, is not enough; some
> showing of a wrongful or unjust act toward plaintiff is
> required.  The party seeking to pierce the corporate veil
> must establish that the owners, through their
> domination, abused the privilege of doing business in
> the corporate form to perpetrate a wrong or injustice
> against that party such that a court in equity will
> intervene.

Shafferman v. The Queens Borough Public Library (In re JMK Constr. Grp., Ltd.), 502

B.R. 396, 405-06 (Bankr. S.D.N.Y. 2013) (quoting Morris v. N.Y. State Dep't of Taxation &

Fin., 623 N.E.2d 1157, 1161 (N.Y. 1993)) (emphasis in original).  In other words, to

prevail under a veil-piercing theory in New York, the evidence must show that the

individual used his control over the corporation to commit "a wrongful or unjust act

specifically directed" to the moving party.  In re JMK Constr. Grp., Ltd., 502 B.R. at 406.

Similarly, "Florida's high regard for corporate ownership requires a showing that

the corporation was specifically organized or used to mislead creditors or to perpetrate

fraud before a party can pierce a corporation's veil."  Thermo Credit, LLC v. Cordia

Commc'n Corp. (In re Cordia Commc'n Corp.), No. 6:11-bk-06493-KSJ, 2012 WL

379776, at *4 (Bankr. M.D. Fla. Feb. 2, 2012) (citing Dania Jai-Alai Palace, Inc. v. Sykes,

450 So.2d 1114, 1120 (Fla. 1984)).  Under Florida's veil piercing law, a creditor may

pursue a corporation's shareholder only where:

> (i) the corporate shareholder dominated and controlled the
> corporation to such an extent that the shareholder was, in fact,
> the alter ego of the corporation; (ii) the corporate form was
> used fraudulently or for an improper purpose; and (iii) the
> fraudulent or improper use of the corporation caused injury to
> the party seeking to pierce the corporate veil.

In re Checiek, 492 B.R. 918, 920 (Bankr. M.D. Fla. 2013) (citing to inter alia Dania Jai-

Alai Palace, 450 So. 2d at 1120); see also Molinos Valle Del Cibao, C por A v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011) (citing Florida law). "Under Florida law, courts are permitted to disregard the corporate form (and pierce the corporate veil) only in the most extraordinary cases. Simply stated, veil piercing is an equitable remedy and used to prevent the fraudulent or improper use of the corporate form from injuring the party seeking to pierce the corporate veil." Id. As noted by Eleventh Circuit,

> A corporation is a legal entity - a fictional person - capable of entering contracts and doing business in its own right. The purpose of this fiction is to limit the liability of the corporation's owners, whether they be individuals or other corporations. Finding this arrangement useful in commerce, the Florida courts will not easily disregard this fiction.

Molinos, 633 F.3d at 1349; see also Dania Jai-Alai Palace, 450 So. 2d at 1118 ("'[S]o long as proper use is made of the fiction that a corporation is an entity apart from its stockholders, the fiction will not be ignored.'" (citation omitted)).

In reaching its conclusion, the Bankruptcy Court determined that the evidence did not support a finding that the Appellees/Debtors formed BCI "to commit any wrongful or improper act that injured Paetec," the second and third requirements for piercing the corporate veil. (Doc. 1-3; Bankruptcy Court Order at 5).[10] First, the Bankruptcy Court found that BCI was formed in 1989 and operated for a legitimate business purpose of marketing telecommunications services, directed primarily to health care providers and

---

[10] The Bankruptcy Court determined that Paetec had established the first element of its alter ego theory, in that the corporate shareholder dominates and controls the corporation to such an extent that the shareholder is, in fact, the alter ego of the corporation. The Bankruptcy Court found that Appellee/Debtor David Bull controls BCI, making the decisions for BCI, and authorizing and controlling the amount of the monthly disbursements from BCI to the Appellees/Debtors. The Bankruptcy Court noted that David Bull is the president and sole shareholder of BCI, and that the Appellees/Debtors are the only officers of the corporation. (Doc. 1-3; Bankruptcy Court Order at 5 (citing Transcript, Vol. I at 83, 113-14, 145, 148)). The parties do not dispute this factual finding.

hospitals in New York and Massachusetts. Id. (citing Doc. 1-34 at 12; Mary Bull Affidavit ¶¶ 2-8). BCI entered into a Sales Agent Agreement with Paetec on October 26, 1998 to procure health care and hospital customers in the northeast United States for Paetec's telecommunications products and services. Id. (citing Doc. 1-34 at 12; Mary Bull Affidavit ¶¶ 11-12). After a successful business relationship for a number of years, Paetec terminated its contract with BCI in November 2008. Id. at 5-6 (citing Transcript, Vol. I at 71; (Doc. 1-123; Evidentiary Hearing Transcript Volume II at 120 ("Transcript, Vol. II")). The Bankruptcy Court concluded that there is no evidence that BCI's corporate form "was used as 'a mere device or sham to accomplish some ulterior purpose,' such as to defraud PaeTec or commit an illegal act." Id. at 6 (citing Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1361 (M.D. Fla. 2007)).

As to the third prong of the alter ego inquiry, the Bankruptcy Court found that "there is no evidence in this case that the Debtors' use of BCI's corporate form caused any injury to PaeTec." Bankruptcy Court Order at 6. In reaching this determination, the Bankruptcy Court cited to the testimony of Paetec's corporate representative, to find that

> PaeTec does not assert that the Debtors' relationship with BCI
> was improper, that the Debtors operated BCI improperly, or
> that PaeTec was damaged by the manner in which the
> Debtors operated BCI. . . . The representative did not identify
> any use of the corporate structure that harmed PaeTec during
> the course of its contractual relationship with BCI.

Id. (citing (Transcript, Vol. I at 33-34, 44). Additionally, the Bankruptcy Court found that Paetec "engaged in an 'extensive course of performance' with BCI under the Agreement, and that BCI's marketing efforts on behalf of PaeTec resulted in sales that generated 'substantial commissions.'" Id. (citing Doc. 1-23 at 11; Paetec's First Amended Answer

19

and Counterclaims filed in New York Litigation (Fourth Affirmative Defense and First Counterclaim) (attached to Paetec's Proof of Claim No. 19)). Based upon the evidence in the record, the Bankruptcy Court concluded that "the evidence does not establish that the Debtors used BCI's corporate form fraudulently or for an improper purpose, or that the Debtors' use of the corporate form caused any injury to Paetec." Bankruptcy Court Order at 6. The Bankruptcy Court held that "BCI's corporate veil should not be pierced, and PaeTec's claim in the Debtors' individual Chapter 11 case should be disallowed." Id.

### 2.    Analysis

Paetec contends that the Bankruptcy Court erred in finding that "no evidence" supported a finding that the Appellees/Debtors used the BCI corporate form fraudulently or for an improper purpose, and that fraudulent or improper use of the BCI corporation caused injury to Paetec, the second and third prongs of the alter ego test. (Doc. 9; Paetec Initial Brief at 1). Paetec contends that the Bankruptcy Court failed to "mention[ ] the substantial - and undisputed - evidence adduced during the two evidentiary hearings reflecting the presence of both prongs." Id.[11]

---

[11]   Paetec argues that the Bankruptcy Court's Order does not contain findings of fact or any explanation of its rulings "sufficient for an appellate court to review under the clearly erroneous standard, or any standard." (Doc. 9; Paetec Initial Brief at 29). Paetec urges that the Court reverse the Bankruptcy Court's Order and remand the case to the Bankruptcy Court "with instructions for more detailed findings" on both the alter ego and substantive consolidation issues. Id.

Bankruptcy Courts must follow Rule 52, Federal Rules of Civil Procedure (Rule(s)), when conducting adversary proceedings. Holloway v. John Hancock Mut. Life Ins. Co. (In re Holloway), 81 F.3d 1062, 1066 n.5 (11th Cir. 1996) (citing Fed. R. Bankr. P. 7052). Rule 52 requires that "facts be found specifically and that the conclusions of law be stated separately." Bravaro Palace, S.A. v. Vacation Tours, Inc., 203 F. App'x 252, 255 (11th Cir. 2006). See generally Fed. Land Bank of Jackson v. Cornelison (In re Cornelison), 901 F.2d 1073, 1075 (11th Cir. 1990) (remand is appropriate if the bankruptcy court "is silent or ambiguous as to the necessary factual findings"). "However, the court 'need only make brief, definite, pertinent findings and conclusions upon the contested matters.'" Wachovia Bank N.A. v. Tien, No. 13-11971, 2014 WL 7399064, at *4 (11th Cir. Dec. 31, 2014) (quoting Stock Equip. Co. v. Tennessee Valley Auth., 906 F.2d 583, 592 (11th Cir. 1990)). The purpose of the exacting

(continued...)

### a.   Improper Purpose

Paetec argues that the Bankruptcy Court's finding that there was no evidence to support Paetec's assertion that the Bulls used BCI for an "improper purpose," is clearly erroneous.  Paetec contends that the evidence establishes: (1) that BCI has conducted no business since 2008 except to receive monthly commissions from Paetec, which were paid immediately to the Bulls through a "three-party account," leaving no money in the account for BCI; (2) that since 2008, BCI has not paid withholding taxes to the Internal Revenue Service ("IRS") on behalf of the Bulls, and that the Bulls did not make "necessary payments at the end of the tax year on this income from Paetec;" (3) that the Bulls "owed hundreds of thousands to the IRS by early 2012," and (4) that "[t]he IRS laid out the impropriety of the Bulls' actions at their creditor meeting."  (Doc. 9; Paetec Initial Brief at 13 (citing to the Evidentiary Hearing Transcript and Exhibits)).  Thus, according to Paetec, the "Bulls' use of BCI permitted them to evade" the statutory obligation to make quarterly estimated income tax payments, in compliance with federal law.  Paetec contends that the Bulls passed the commissions through BCI instead of receiving the

---

[11](...continued)
requirements of Rule 52 "is to 'provide a sufficiently definite predicate for proper appellate review.'" Bravaro Palace, 203 F. App'x at 255 (quoting Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc., 520 F.2d 1030, 1033-34 (5th Cir. 1975)).  "Although [Rule 52(a)] requires specific findings of fact, it does not require a finding on every contention raised by the parties."  Feazell v. Tropicana Prods., Inc., 819 F.2d 1036, 1042 (11th Cir. 1987).  Nor is the trial court (here, the Bankruptcy Court) required to discuss all of the evidence presented at trial.  See Wachovia Bank, 2014 WL 7399064, at *4.  "[F]indings 'must be sufficiently detailed to give [the appellate court] a clear understanding of the analytical process by which the ultimate findings were reached and to assure [the appellate court] that the trial court took care in ascertaining the facts.'"  Feazell, 819 F.2d at 1042 (quoting Golf City, Inc. v. Wilson Sporting Goods Co., 555 F.2d 426, 433 (5th Cir. 1977)).

The Court holds that the Bankruptcy Court's findings of fact establish that the Bankruptcy Court took care in ascertaining the facts, and that the findings of fact are sufficient for appellate review.  The Court turns to whether the Bankruptcy Court's findings of fact were clearly erroneous, or whether, as Paetec asserts, the Bankruptcy Court's alleged failure to consider specific evidence constitutes clear error requiring remand.

commissions directly from Paetec to avoid Paetec "being required to withhold taxes from these transfers." Id. at 14. Paetec argues that the Bulls used "the corporate form to evade a statutory obligation," and to "live tax-free and evade federal income tax statutes," which is "an improper use under the alter ego test." Id. (citing Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So. 2d 849, 852 (Fla. 1971)); see also id. at 12 (arguing that improper purpose can be established by evidence that the "corporation was simply used to evade some statute or affect an illegal purpose at some date after formation." (citing Aztec Motel, 251 So. 2d at 852) (emphasis in original)).

In Aztec Motel, the Florida Supreme Court examined a state statute pertaining to whether the state could dissolve a corporation based upon the conduct of the corporation's shareholders. The court noted the general rule that if all stockholders or members of a corporation, acting as individuals instead of by formal corporate action, do illegal acts as individuals which, if done by formal corporate action, would be grounds for forfeiting the corporate charter and dissolving the corporation, the fiction of the corporate entity apart from the members will be disregarded and such action of the stockholders or members will be treated as action of the corporation in a proceeding by the state to forfeit the corporation's charter. 251 So. 2d at 853. The court stated that

> courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.

Id. at 852. The decision in Aztec Motel is directed to defining when the state may dissolve a corporation found to exist for the purpose of evading a statute, accomplishing

fraud, or operating with illegal purpose for purposes. The court was silent as to whether a creditor is entitled to pierce the corporate form based solely on a corporation's purpose being to evade a statute. Aztec Motel does not apply to or counsel a result in this case. As such, it was not necessary as outcome determinative for the Bankruptcy Court to make any factual findings with respect to the Bulls' income taxes because the Bulls' tax status is not relevant to whether Paetec is entitled to pierce the BCI corporate veil. Additionally, pursuant to the Sales Agent Agreement between Paetec and BCI, Paetec was required to pay commissions to BCI, not to the Bulls, and BCI, in turn, was responsible for paying all taxes and estimated taxes payable with respect to the commissions, as well as for withholding taxes on behalf of any salesmen or sub-agents. (Doc. 1-23 at 16; Sales Agent Agreement ¶ 8).[12] The Aztec Motel decision, as well as the evidence in this record, do not establish that the Bulls' alleged income tax deficiencies entitle Paetec to an order piercing the corporate form of BCI to enable Paetec to assert a claim as creditor to BCI, against the individual Debtors/Appellees in this Chapter 11 case.

Additionally, Paetec argues (1) that it is entitled to assume that BCI is "adequately capitalized, with at least some intent or ability to be able to meet its obligations (such as refund overpayments from Paetec prior commissions, which is the basis for the counterclaim and Claim No. 19);" (2) that "[i]mproper conduct does not require any active fraud on the creditor in question, or acts of misrepresentation to that creditor," and (3) that

---

[12] The Sales Agent Agreement provides: "Agent shall be solely responsible for the payment of all taxes (including estimated taxes) payable with respect to commissions earned by it pursuant to this Agreement." Sales Agent Agreement ¶ 8. In determining whether a finding of fact which is supported by evidence is nonetheless clearly erroneous, the reviewing court "on the entire evidence" must ascertain if a mistake has been committed. United States v. U.S. Gypsum Co., 333 U.S. at 395; In re Piazza, 719 F.3d at 1273.

"doing business with a third party through a corporation - as the Bulls did here with Paetec through BCI - and then depleting the corporation of any assets resulting in the third party having no remedies relating to the transactions constitutes using a corporate form for an improper purpose."  Paetec Initial Brief at 12-15 (citing USP Real Estate Inv. Trust v. Discount Auto Parts, Inc., 570 So. 2d 386, 393 (Fla. 1st DCA 1990) and 17315 Collins Ave., LLC v. Fortune Dev. Sales Corp., 34 So. 3d 166, 169 (Fla. 3d DCA 2010)).

In USP Real Estate, the court pieced the corporate veil of a shell subsidiary corporation to reach the parent corporation for money owed on a shopping center lease. There, the shell corporation was assigned a lease as lessee, and the parent corporation, Discount, actually operated a business on the premises, in violation of the lease which required that the lessee actually occupy the premises and operate the business.  The president of Discount, who was also president of the shell subsidiary, admitted that the purpose of making the shell corporation the lessee was to insulate Discount from liability to the landlord when Discount decided to close the store.  The shell corporation never had a bank account, reported any income, maintained an inventory, had any receipts or expenditures, and made no rental payments.  UPS Real Estate Inv., 570 So. 2d at 389-90, 392.  Citing Dania Jai Alia Palace, supra, as providing the standard for piercing the corporate veil, the court determined that the parent corporation engaged in improper conduct by organizing and using the shell subsidiary corporation for the sole purpose of assigning a lease to avoid any liabilities for rent, and by violating the terms of the lease, misleading the lessor.  570 So. 2d at 392.  The court noted that the lessor was entitled to rely upon the terms of the lease and assume that the tenant would comply with its provisions, and be the operating arm of the retail business holding and owning the assets

24

of the retail business, and capable of making payments for the duration of the lease.  Id. at 393.

Likewise, in Fortune Development, the court determined that a parent company used a subsidiary for an improper purpose as required to pierce the corporate veil, where the parent company placed funds in the subsidiary's operating account so that a judgment creditor, with a judgment against the parent, could not reach the funds.  34 So. 3d at 168-69.  There, the Plaintiff Fortune obtained a $1.5 million final judgment against the parent company, Wavestone Properties, LLC, based upon Wavestone's termination and breach of an exclusive real estate listing agreement between Fortune, as broker, and Wavestone, pursuant to which Fortune was to market and sell condominium units, owned, developed and operated by subsidiary 17315 Collins Avenue, LLC.  In proceedings supplementary on the judgment, the trial court pierced the corporate veil of the subsidiary 17315, and allowed the judgment against Wavestone to operate as a lien against the real estate owned by 17315.  Id. at 167-68.  Though Wavestone owned a membership interest and was the managing member of 17315, it did not conduct any operations, have any employees, or have any bank accounts.  Id. at 168-69.  The court determined that the two companies, Wavestone and 17315 operated as alter egos.  The Court found improper purpose based upon the fact that Wavestone placed $250,000 in funds specifically intended to indemnify Fortune for its losses, into 17315's operating accounts for use in the development of the condominium project.  The court held that Wavestone used the corporate entities "for an improper purpose when it depleted the $250,000 amount."  Id. at 169.

Neither case cited by Paetec held that a creditor is entitled to pierce the veil of the

25

corporation just because the corporation is not "adequately capitalized," as Paetec suggests.  Rather both cited cases turned on the specific facts presented.  Here, Paetec cites to no evidence that the Sales Agent Agreement between Paetec and BCI (see Doc. 1-23 at 15) required BCI to retain assets or earmark funds to pay Paetec, or that in the course of dealing, BCI was obligated to retain assets for the purpose of reimbursing Paetec.  Indeed, under the Sales Agent Agreement, as noted by the Bankruptcy Court, Paetec was obligated to pay BCI commissions for its services; BCI had no obligation to pay Paetec.  BCI was not created solely to circumvent some contractual obligation to pay Paetec.  Additionally, Paetec fails to cite to any evidence that BCI misrepresented or lulled Paetec into believing that BCI retained assets for purposes of paying or reimbursing Paetec, or that BCI re-directed funds to the Bulls that were specifically intended for Paetec, as was the case in Fortune Development.  See Fortune Dev., 34 So. 2d at 169. Moreover, in light of the three-way account, Paetec cites to no evidence that it did not know that the commission payments flowed through the BCI account into the Bulls' account.

### b.    Injury to Paetec

Paetec contends that the Bulls' "improper use" of BCI injured Paetec because "Paetec has no way to satisfy any judgment it may obtain on its counterclaim against BCI in the New York Action," the third prong of the alter ego inquiry.  Paetec Initial Brief at 16. As support, Paetec argues that (1) "BCI has no assets but its income stream from the Paetec contract, which is spent in full each month by the Bulls;" (2) "[t]he $305,026.86

26

IRS proof of claim was filed as secured based on tax liens;"[13] (3) the Bulls' sworn amended disclosure statement "confirms that the IRS has a blanket lien on all of the Bulls' assets . . . which lien extends to all of BCI's assets such as the New York lawsuit;"[14] and (4) the IRS lien "will prevent Paetec from setting off the sums due and owing on any counterclaim damages." Id. (citing Evidentiary Hearing Transcript and Exhibits).

Paetec's contention that it has been injured by the Bulls' "improper use" of BCI necessarily fails because, as determined by the Bankruptcy Court, and affirmed in the Court's foregoing discussion, Paetec has failed to establish that the Bulls established or operated BCI improperly with regard to its Sales Agent Agreement with Paetec. The purpose of the corporate fiction, which recognizes a corporation as a legal entity capable of entering contracts and doing business in its own right, is to promote commerce by "limit[ing] the liability of the corporation's owners, whether they be individuals or other corporations." Molinos, 633 F.3d at 1349. The fact that BCI may not retain sufficient assets to satisfy an inchoate claim that Paetec may have does not in and of itself give rise to a basis for disregarding the corporate form and piercing the veil to reach the corporation's individual shareholders. Likewise, an IRS lien on the Bulls' interest in BCI does not mean that the IRS lien extends to all of BCI's assets, or that BCI's assets were improperly depleted so as to injure Paetec.

---

[13]   Paetec cites to Paetec Exhibit 19 to the Evidentiary Hearing as support for this assertion. Paetec Initial Brief at 16.  Exhibit 19 is an IRS Notice of Levy, reflecting an amount of $192,809.74.  See Evidentiary Hearing, Paetec Exhibit 19.

[14]   Paetec cites to Paetec Exhibit 56 to the Evidentiary Hearing, specifically to Exhibit B of that exhibit.  Paetec Initial Brief at 16.  Exhibit B to Paetec's Exhibit 56 is entitled "Chapter 11 Liquidation Analysis," and lists the Bulls' assets.  It includes "Interest in Bull Communications, Inc." of "unknown" value as an asset of the Bulls' bankruptcy estate.  The exhibit indicates that the IRS has a "100%" lien on the Bulls' "Interest in Bull Communications, Inc."  Evidentiary Hearing, Paetec Ex. 56, Ex. B.

Paetec also takes issue with the Bankruptcy Court's reliance on the testimony of Paetec's corporate representative Daniel Miller to support its finding that the manner in which the Bulls operated BCI or used its corporate structure caused no injury to Paetec. (See Doc. 1-3; Bankruptcy Court Order at 6). Paetec contends that the questions and answers read at the Evidentiary Hearing and cited by the Bankruptcy Court were "parsed," and were objected to by Paetec as being outside of the scope of the Rule 30(b)(6) notice of deposition and improper because the corporate representative was not permitted to refer to documents. Paetec Initial Brief at 17-18. Paetec cites to corporate representative Miller's deposition testimony that he believed that the Bulls and BCI were "one and the same," even though they kept separate bank accounts. Id. at 19 (citing e.g. Evidentiary Hearing, Debtor Ex. 2; Miller Dep. at 55).

The Bankruptcy Court's reliance upon the corporate representative's testimony in support of its determination that Paetec has not been injured by the Bulls' operation of BCI is not clearly erroneous. The Bankruptcy Court cited to the Evidentiary Hearing Transcript in which the following testimony from the Rule 30(b)(6) corporate representative deposition of Paetec's Daniel Miller was read:

> [Bulls' Counsel]:
>
> Q:   Does Paetec maintain that there is anything improper about the way Dave Bull ran BCI prior to Dave and Mary Bull filing a bankruptcy case?
>
> [Paetec's Counsel]: Objection, document speaks for itself.
>
> [Bulls' Counsel]: There is no document.
>
> [Paetec's Counsel]: You can answer.  He just referred to a document.  He can answer.
>                                        . . .

28

[Bulls' Counsel]:

Q.    Can you answer that question, sir?

A.    Can you ask it again, please?

Q.    Does Paetec maintain that there is anything improper
      about the way Dave Bull ran BCI prior to the Bulls filing
      their bankruptcy case?

[Paetec's Counsel]: Object to form.

A.    No.

                            . . .

Q.    Does Paetec maintain there is anything improper about
      the way Dave Bull has run BCI since the Bulls filed their
      bankruptcy case?

[Paetec's Counsel]: Object to form

A.    No.

Q.    Does Paetec maintain it has been damaged by the way
      Dave Bull has run BCI?

[Paetec's Counsel]: Object to form.

A.    No.

Bankruptcy Court Order at 6 (citing Transcript, Vol. I at 33-34 (quoting Miller Dep. at 42-

43)).  The Bankruptcy Court also cited to the Evidentiary Hearing Transcript in which the

following deposition testimony of corporate representative Miller was read:

Q.    Mr. Miller, is it Paetec's position that it had been
      damaged by the Bulls filing a bankruptcy case?

[Paetec's Counsel]: Object to form.

A.    No.

Bankruptcy Court Order at 6 (citing Transcript Vol. I at 44 (quoting Miller Dep. at 77)).

Paetec's citation to other portions of the Miller Deposition in which the corporate representative was asked to answer questions without looking at Paetec's filings in the bankruptcy case, does not negate or undermine his responses to the specific questions cited above.  The Bankruptcy Court stated that it would review the entire Miller deposition, See Transcript, Vol. I at 45, and Paetec points to nothing in this record to establish that the Bankruptcy Court did not consider the entirety of Mr. Miller's testimony in reaching its conclusion.  The Bankruptcy Court was required only to make brief, definite, pertinent findings and conclusions upon the contested matters.  See Wachovia Bank N.A. v. Tien, No. 13-11971, 2014 WL 7399064, at *4 (11th Cir. Dec. 31, 2014).  It was not required to make a finding on every contention raised by Paetec, nor was it required to discuss all of the evidence presented.  See Wachovia Bank, 2014 WL 7399064, at *4; Feazell v. Tropicana Prods., Inc., 819 F.2d 1036, 1042 (11th Cir. 1987).  The Bankruptcy Court found that the corporate representative did not identify any use of corporate structure that harmed Paetec during the course of its contractual relationship with BCI, which is a sufficient, pertinent, and unambiguous finding.  The Bankruptcy Court's reliance upon the cited corporate representative testimony in support of its conclusion that the Bulls' relationship with BCI was not improper or cause injury to Paetec, is not clearly erroneous.

For the foregoing reasons, the Bankruptcy Court's Order, sustaining the Appellee'/Debtors' Objection to Paetec's Claim Number 19, and disallowance of Claim Number 19, is due to be affirmed.

### C.    Denial of Substantive Consolidation

On October 15, 2012, Paetec filed a Motion to Substantively Consolidate Debtor David Bull's Wholly Owned Company Bull Communications, Inc. Into This Estate, seeking

to substantively consolidate BCI, a non-debtor entity, into the Bulls' bankruptcy estate. (Doc. 1-36).  The Debtors/Appellees responded with an objection to the Motion for Substantive Consolidation, (Doc. 1-54), and a supplemental objection to Paetec's claim, Answer Brief at 13, on November 19, 2012 and May 23, 2013, respectively.

The Court's authority to award substantive consolidation rests with its general equitable powers.  Eastgroup Props., 935 F.2d at 248; In re McTeer Oil Co., Inc., No. 13-60660-EJC, 2014 WL 2022052, at *5 (Bankr. S.D. Ga. May 14, 2014) (citing Eastgroup Props., 935 F.2d at 248).  Substantive consolidation "involves the pooling of the assets and liabilities of two or more related entities; the liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation.'" Eastgroup Props., 935 F.2d at 248.  Consolidation tends to redistribute the amount and likelihood of recovery among creditors of the consolidated entities.  Id. (trustee of two debtors sought consolidation of the two bankruptcy cases); see also Colonial Realty, 966 F.2d at 61 (consolidation of entities with different debt-to-asset ratios results in redistribution of wealth among creditors of the entities).

> The focus of piercing the corporate veil is the limited liability afforded to a corporation, and "[l]iability therefore may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties. . . . Substantive consolidation, on the other hand, has a narrower focus: "the equitable treatment of all creditors [,]" . . . and it turns on "two critical factors: (i) whether creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit,'; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors."

Colonial Realty, 966 F.2d at 61 (citations omitted).  "Substantive consolidation should be invoked 'sparingly' where any creditor or debtor objects to its use."  In re Reider, 31 F.3d

at 1109 (citation omitted).

The Eleventh Circuit requires that "the proponent of substantive consolidation must show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit." Eastgroup Props., 935 F.2d at 248 (citations omitted).   In order for substantive consolidation to pass the second prong of the court's inquiry, "the demonstrated economic benefits to creditors of consolidation [must] outweigh the harm that consolidation will cause to creditors." In re McTeer Oil Co., 2014 L 2022052, at *8. "When this showing is made, a presumption arises that creditors have not relied solely on the credit of one of the entities involved." Eastgroup Props., 935 F.2d at 248 (internal quotations and citations omitted). "Once the proponent has made this prima facie case for consolidation, the burden shifts to an objecting creditor to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." Id. "Finally, if an objecting creditor has made this showing, the court may order consolidation only if it determines that the demonstrated benefits of consolidation heavily outweigh the harm." Id. (internal citations and quotations omitted).  Substantive consolidation can be pursued by the Trustee, see, e.g., Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 216 (1941); Eastgroup Properties, 935 F.3d at 248; Gordon v. Harman (In re Harman), 512 B.R. 321, 345 (Bankr. N.D. Ga. 2014), or a creditor, see In re Gordon Properties, LLC, 478 B.R. at 756 (creditor had standing to pursue substantive consolidation); In re Alico Mining, Inc., 278 B.R. 586, 587 (Bankr. M.D. Fla. 2002) (on motion by creditor, court had jurisdiction to substantively consolidate estate of debtor with estate of non-debtor).

The Eleventh Circuit has listed a plethora of factors to be considered in

determining whether substantive consolidation is appropriate, likening the bankruptcy court's power to substantively consolidate "to the ability to pierce the corporate veil of separate corporations to reach assets for the satisfaction of a related corporation's debt." Eastgroup Props., 935 F.2d at 248 n.9. These factors are:

> (1)   The presence or absence of consolidated financial statements.
>
> (2)   The unity of interests and ownership between various corporate entities.
>
> (3)   The existence of parent and intercorporate guarantees on loans.
>
> (4)   The degree of difficulty in segregating and ascertaining individual assets and liabilities.
>
> 5)   The existence of transfers of assets without formal observance of corporate formalities.
>
> (6)   The commingling of assets and business functions.
>
> (7)   The profitability of consolidation at a single physical location.
>
> (8)   The parent owning the majority of the subsidiary's stock.
>
> (9)   The entities having common officers and directors.
>
> (10)   The subsidiary being grossly undercapitalized.
>
> (11)   The subsidiary transacting business solely with the parent.
>
> (12)   Both entities disregarding the legal requirements of the subsidiary as a separate organization.

Eastgroup, 935 F.2d at 249-50.

While "[t]raditional substantive consolidation cases involve bankruptcy cases

already pending before the bankruptcy court," <u>Fishell v. U.S. Trustee (In re Fishell)</u>, No. 95-1637, 111 F.3d 131, 1997 WL 188458, at *3 (6th Cir. 1997) (unpublished opinion), the Supreme Court has tacitly recognized substantive consolidation of a non-debtor entity.  In <u>Sampsell</u>, 313 U.S. at 218, the Court held that when a bankruptcy court ordered that property of a non-debtor family corporation was consolidated with the property of the bankruptcy estate, an unsecured creditor of the non-debtor corporation was entitled only to "<u>pari passu</u>" participation with debtor's individual creditors.  <u>Sampsell</u>, 313 U.S. at 218, 221; <u>see also</u> <u>In re Reider</u>, 31 F.3d at 1105, 1106 & n.4 (noting that in <u>Sampsell</u>, "the Supreme Court gave its tacit approval to this equitable power to substantively consolidate two estates" when it "upheld the bankruptcy referee's consolidation of the estate of the individual debtor with the assets of the debtor's corporation which was wholly owned by the debtor and his family"); <u>In re Bonham</u>, 229 F.3d at 766-67 (approving substantive consolidation of Chapter 7 debtor's estate with the non-debtor estates of her closely held corporations where corporations had been used to further debtor's Ponzi scheme and were but instrumentalities of the debtor with no separate existence of their own, and where all creditors would benefit by the resultant avoidance of fraudulent transfers); <u>In re Harman</u>, 512 B.R. at 345 (allegations in Trustee's complaint stated plausible claim for substantive consolidation of debtor and various non-debtor entities); <u>Kapila v. S&G Fin. Servs. of South Fla., Inc. (In re S&G Fin. Servs. of South Fla., Inc.)</u>, 451 B.R. 573, 579-82 (Bankr. S.D. Fla. 2011) (it is within bankruptcy court's equitable powers to allow substantive consolidation of entities under appropriate circumstances, whether or not all of those entities are debtors in bankruptcy).  <u>But see</u> <u>First Fed. Bank v. Footman (In re Big Foot Props., Inc.)</u>, No. 3:11-bk-6868-JAF, 2012 WL 6892645, at *3 (Bankr. M.D. Fla. May

25, 2012) (The language of Sampsell "is dicta and does not provide a sound precedent for non-debtor substantive consolidation."); In re Cordia Commc'ns Corp., 2012 WL 379776, at *3-4 (recognizing a split of authority as to whether the bankruptcy court has the authority to substantively consolidate a non-debtor's assets and liabilities into a bankruptcy debtor's estate (citing cases), and concluding that any request to substantively consolidate non-debtors must fail under 11 U.S.C. § 105(a) of the Bankruptcy Code "because it is not an act that is 'necessary or appropriate' to carry out any legitimate bankruptcy purpose."); In re Pearlman, 462 B.R. 849, 854-56 (Bankr. M.D. Fla. 2012) (bankruptcy court lacks authority to order substantive consolidation of non-debtors). The Bankruptcy Court recognized this split of authority in its Order, (see Doc. 1-3; Bankruptcy Court Order at 7), and proceeded to consider Paetec's motion for substantive consolation on its merits.[15]

### 1.  Standing

The Court questions whether it has subject matter jurisdiction to consider Paetec's appeal from the Bankruptcy Court's Order denying Paetec's motion for substantive consolidation of the Bulls' estate with BCI. This is because, while at the outset of this appeal, Paetec had standing to pursue the appeal of both issues, the Court has determined that the Bankruptcy Court's disallowance of Paetec's claim is due to be affirmed and as such, Paetec is not a creditor of the Bulls' estate. The parties have not specifically addressed whether Paetec as a non-creditor has standing in this bankruptcy

---

[15] Likewise, this Court does not resolve the question of whether a creditor of a non-debtor or entity that is not in bankruptcy may move for substantive consolidation with an existing bankruptcy estate, based upon the Court's affirmance of the Bankruptcy Court's conclusion that substantive consolidation is not appropriate in this case.

action to pursue substantive consolidation of BCI with the Bull's estate. (See Doc. 18; Paetec Reply Brief at 1 ("creditors have standing to pursue substantive consolidation")); (Doc. 17 Answer Brief at 9-10 (trustees and creditors have standing to pursue substantive consolidation; Paetec as a non-creditor does not have standing)). Neither party cited to any authority, and the Court could not locate any, which recognizes that a creditor of a third-party non-debtor entity not in bankruptcy had standing to assert substantive consolidation in the bankruptcy proceeding of an estate in which it had no interest. See generally Eastgroup Props., 935 F.2d at 248 (The purpose of substantive consolidation is "'to insure the equitable treatment of all creditors.'" (citation omitted)). Moreover, Paetec would cease to be a "person aggrieved" with standing to appeal the Bankruptcy Court's Order with regard to substantive consolidation, because its interest as a third-party non-creditor of the Bulls' estate in bankruptcy is not protected or regulated by the Bankruptcy Code. See In re Ernie Haire Ford, Inc., 764 F.3d at 1327. To the extent the Bankruptcy Court's Order is affirmed with regard to disallowing Paetec's Claim No. 19, Paetec appears to lose standing to pursue an appeal of the substantive consolidation portion of the Bankruptcy Court's Order because it is not a creditor of the Bulls' estate in bankruptcy. Thus, the portion of Paetec's appeal directed to substantive consolidation, is due to be dismissed for lack of subject matter jurisdiction.

### 2. The Bankruptcy Court's Order Denying Substantive Consolidation

In the event the Court retains jurisdiction to entertain this portion of the appeal, the Court starts with a review of the Bankruptcy Court's Order. Recognizing that the law in the Eleventh Circuit is "unsettled" with regard to whether a bankruptcy court has the authority to substantively consolidate a non-debtor's asserts and liabilities into a bankrupt

36

debtor's estate, (Doc. 1-3; Bankruptcy Court Order at 7 (citing In re Cordia Commc'ns
Corp., 2012 WL 379776, at * 3), the Bankruptcy Court declined to resolve the question as
unnecessary because "the evidence does not establish that substantive consolidation
would be appropriate under any standard." Id. at 8.  The Bankruptcy Court set forth the
legal standard and factors used for determining substantive consolidation, id. at 8, which
has not been objected to here on appeal and which, upon de novo review, was correctly
considered.  The Bankruptcy Court first determined that the evidence did not establish
that "there is substantial identity" between the Bulls and BCI, stating that "[a]though the
Debtor, David Bull, is its sole shareholder and controls its decisions, BCI has maintained
its separate corporate identity since its inception." Id. at 9.  The Bankruptcy Court cited to
the testimony of David Bull that establishes that BCI currently is a Florida corporation that
files annual reports with the State of Florida; BCI retains a certified accountant that
advises the corporation regarding tax issues; BCI retained an attorney to assist when
converting from a New York to a Florida corporation; BCI maintains bank accounts that
are separate from those of the Bulls; during its operation, BCI incurred debts to third
parties that are not the debts of the Bulls; "BCI receives a monthly payment from PaeTec
in its bank account, pays its expenses from the deposit, and then pays the Debtors;" BCI
files corporate tax returns; BCI retained a subcontractor and lobbying group in connection
with its operations; and "BCI has not transferred any property to the Debtors, other than
the monthly payments for their expenses." Id. at 9 (citing Transcript, Vol. I at 52-58;
Transcript Vol. II at 108-109).  The Bankruptcy Court also noted that BCI, and not the
Bulls, entered into the Sales Agent Agreement with Paetec, and that "BCI is the sole
plaintiff in the action pending against PaeTec in New York." Id.

Second, the Bankruptcy Court found substantive consolidation is "not necessary to avoid some harm or to realize some benefit." Bankruptcy Court Order at 11. It determined that substantive consolidation is not required to sort out the financial transactions of BCI and the Bulls, and that the two are not so intertwined that their respective assets and liabilities are not separate and distinct. Id. at 10-11. The Bankruptcy Court observed that "David Bull testified that BCI did not transfer any property to the Debtors, other than payment for their sales efforts, and PaeTec's representative testified that he was not aware of any improper transfers between BCI and the Debtors." Id. at 11 (citing Transcript, Vol. I at 37, 39, 58). Additionally, the Bankruptcy Court determined that "the evidence does not show that the creditors of the individual Debtors looked to BCI for payment of their claims, or that the Debtors' creditors are also the creditors of BCI." Id. at 11. For these reasons, the Bankruptcy Court held that substantive consolidating was not appropriate in this case.

Paetec argues that the Bankruptcy Court's factual findings suffer from clear error and an abuse of discretion, because the Bankruptcy Court failed to consider much of the same evidence Paetec asserts in connection with its corporate veil argument. (Doc. 9; Paetec Initial Brief at 21). Specifically, Paetec argues that the Bankruptcy Court's factual findings are clearly erroneous because (1) "[t]he Bulls do not pay themselves based on their individual work, as the Bankruptcy Court found," but rather the Bulls pay themselves from BCI based upon their individual bill-paying needs at the time; and (2) the Bankruptcy Court's finding that the evidence does not show that the Bulls' creditors look to BCI for payments of their claims is clearly erroneous, citing to "[t]he IRS lien encumbering BCI and all of its assets based on the Bulls' failure to pay income tax." Id. at 22-23 (citing

Evidentiary Hearing Transcript and Exhibits).  For the reasons that follow, the Court concludes that the Bankruptcy Court's findings of fact are not clearly erroneous, and do not require remand for further consideration.

The evidence cited by Paetec in support of its argument that the Bulls were not being compensated for work done, is testimony regarding the Bulls' monthly withdrawals from the BCI account, after the monthly payment was deposited by Paetec into the BCI account.  What Paetec neglects to acknowledge is that Paetec did indeed deposit the monthly payment into BCI's account, pursuant to the terms of the Sales Agent Agreement between BCI and Paetec, for commissions relating to ongoing customers of Paetec procured by BCI, and as payment to BCI to refrain from competing for certain customers.[16]  Paetec would not be gratuitously depositing funds monthly into BCI's account for no reason, but rather to honor its obligations for work done, pursuant to the Agreement between Paetec and BCI.  How the Bulls withdrew the earned funds from BCI's account does not contradict the Bankruptcy Court's finding of fact, or undermine its holding that substantive consolidation is not appropriate here.

Moreover, nothing in the evidence cited by Paetec establishes that the IRS is looking to BCI for payment of any tax obligations the Bulls, as individuals, may have to the IRS.  Rather, the Bulls' interest in BCI, at a value "unknown," is listed as an asset in the Bulls' Bankruptcy Estate, on which the IRS has placed a 100% lien.  Paetec misstates that the IRS has "filed a lien encumbering BCI and all of its assets."  The IRS lien is on the Bulls' interest in BCI; the IRS is not "looking to BCI to satisfy its claim against the

---

[16]  The Court reviews "all of the evidence" to determine whether the Bankruptcy Court's findings of fact are clearly erroneous.  See In re Piazza, 719 F.3d at 1273.

Bulls."  Paetec Initial Brief at 23.

    Indeed, in light of Paetec's argument that BCI has no assets, it's contention that

the IRS is looking to BCI for payment of the Bulls' debts is internally inconsistent.  There

is no evidence that any creditor of the Bulls is looking to BCI for purposes of payment,

and Paetec appears to be the only BCI creditor seeking to consolidate with the Bulls'

estate.  More importantly, as recognized by the Bankruptcy Court, the Bulls and BCI

maintain separate accounts, and assets.  The Bulls' creditors are able to seek

remuneration based upon the Bulls' assets, while BCI's creditors, including Paetec, may

seek recovery from BCI's assets, which include BCI's interest in the pending New York

Litigation. Paetec has not demonstrated that the economic benefits to creditors of

consolidation outweighs the harm that consolidation will cause to creditors, particularly to

those creditors of the Bulls, which would be required to pool the Bulls' assets with those

of BCI, and share them with Paetec, if substantive consolidation were permitted.

    The Court rejects Paetec's argument that the Bankruptcy Court failed to consider

"germane factors" in reaching its conclusion that substantive consolidation is not

appropriate here.  Paetec Initial Brief at 24.  While recognizing that Appellee/Debtor

David Bull is the sole shareholder of BCI and controls its decisions, the Bankruptcy Court

made ten (10) specific factual findings supporting its conclusion that BCI has maintained

a separate corporate identity, and that the affairs of the Bulls and BCI are not

intermingled.  Bankruptcy Court Order at 9.  The Bankruptcy Court underscored that BCI

and Paetec entered into the Sales Agent Agreement, not the Bulls, and that BCI and

Paetec are the parties in the New York Litigation.  Id.  Additionally, the Bankruptcy Court

concluded that "[t]he affairs of the Debtors and the affairs of BCI are not so intertwined

that it is difficult to segregate the assets and liabilities of the individuals from the assets and liabilities of the corporation," id. at 10, touching a number of other factors which Paetec asserts were not considered.  The evidence cited by Paetec does not support its assertion that the transfers of funds from BCI to the Bulls were "without formal observance of corporate formalities," and that the Bulls and BCI were "[c]ommingling . . . assets and operations."  Paetec Initial Brief at 25-26.  As noted by the Bankruptcy Court, BCI and the Bulls maintained separate bank accounts; BCI receives a monthly payment from Paetec, from which it pays its expenses and pays the Bulls; BCI and the Bulls file separate tax returns; and BCI has not transferred any property to the Debtors, other than monthly payment for their expenses.  Bankruptcy Court Order at 9.  Loans and depreciation of Mary Bull's vehicle by BCI as reflected in BCI's tax return do not signal a "commingling" of assets that would warrant a substantive consolidation of non-party BCI with the Bulls' bankruptcy estate.  Nor, as discussed above, was BCI "grossly undercapitalized" as Paetec contends, Paetec Initial Brief at 26, for the work it was doing, such that it could not meet its required obligations.  Nothing in this record supports a finding that the Bankruptcy Court did not consider all of the evidence before it.  The Court holds that the  Bankruptcy Court Order provides a sufficient basis upon which to evaluate the Bankruptcy Court's conclusion such that remand is not required for further factual findings, and that the factual findings of the Bankruptcy Court, with respect to substantive consolidation, are not clearly erroneous.

## Conclusion

Having closely reviewed the Bankruptcy Court's Order, and having considered the briefs of the parties, the pertinent portions of the record on appeal, and the applicable

law, the Court finds that the Bankruptcy Court's Order is proper and correct as a matter of law, is based on sufficient factual findings which are not clearly erroneous, and is not an abuse of discretion.

Accordingly, it is hereby

**ORDERED**:

1.    Appellees' Motion to Dismiss (Doc. 15) is **DENIED**.

2.    The Bankruptcy Court's Order on (1) Objection to Claim 19 of Paetec Communications, Inc., and (2) Motion to Substantively Consolidate Debtor David Bull's Wholly Owned Company Into This Estate, dated May 6, 2014 (Doc. 1-3), is **AFFIRMED**.[17]

3.    The Clerk of the Court is **DIRECTED** to transmit a certified copy of this Order to the Clerk of the Bankruptcy Court.

4.    The Clerk of the Court is **FURTHER DIRECTED** to enter judgment consistent with this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 24th day of March, 2015.

BRIAN J. DAVIS
United States District Judge

---

[17]    To the extent that Paetec Communications, Inc. lacks standing to pursue its appeal of the Bankruptcy Court's Order (Doc. 1-3) in which the Bankruptcy Court denied Creditor Paetec Communications, Inc.'s Motion to Substantively Consolidate Debtor David Bull's Wholly Owned Company Bull Communications, Inc. Into This Estate (Doc. 1-36), that portion of Paetec Communications, Inc.'s appeal is dismissed for lack of subject matter jurisdiction.

jl/p

Copies furnished to:

The Honorable Paul M. Glenn,
United States Bankruptcy Judge

Counsel of Record